UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 14-22982-Civ-COOKE/TORRES

MARVIN BONDHUS, MD, individually
and on behalf of all others similarly situated,

    Plaintiff,

v.

HENRY SCHEIN, INC.,
a Delaware Corporation,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HENRY SCHEIN, INC.'S MOTION TO
STAY PROCEEDINGS PENDING FCC RULING**

Plaintiff, Marvin Bondhus, MD, individually and on behalf of all others similarly situated, brought this action against Defendant, Henry Schein, Inc., for allegedly violating the Telephone Consumer Protection Act, as amended by the Junk Facsimile Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"), by sending faxes that failed to contain an adequate opt-out notice. Before me now is Defendant's Motion to Stay Proceedings Pending FCC Ruling ("Motion" or "Motion to Stay") and memorandum of law (ECF Nos. 21 and 22), Plaintiff's response (ECF No. 26), and Defendant's reply (ECF No. 27). The Motion has been fully briefed and is ripe for adjudication. I have reviewed the Motion, the parties' arguments, the record, the relevant legal authorities, and am otherwise fully advised in the premises. For the reasons provided herein, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

    **I.**    **BACKGROUND**

Defendant is a provider of health care products and services to office-based dental, animal health, and medical practitioners. (Compl. ¶ 7). Defendant transmits faxes that advertise its products and services to the fax machines of potential

1

customers. (*Id.* at ¶ 8). Plaintiff alleges that Defendant violated the TCPA when it sent noncompliant fax advertisements to Plaintiff's, and other similarly situated persons' or entities', fax machines. (*Id.* at ¶ 2). Specifically, Plaintiff alleges that the faxes "failed to contain a clear and conspicuous opt-out notice stating that the recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful…." (*Id.* at ¶ 10).[1]

### A. The Federal Communications Commission Order

On October 30, 2014, the Federal Communications Commission ("FCC") provided a retroactive waiver of TCPA liability to two-dozen petitioners. (*See* ECF No. 22-1; CG Docket Nos. 02-278 and 05-338, FCC 14-164 (rel. Oct. 30, 2014)). The petitioners argued that the FCC had offered confusing and conflicting statements regarding the applicability of a rule it promulgated which required opt-out notices on fax advertisements sent to recipients that had given prior express invitation or permission to the sender to receive the faxes. (*Id.* at p. 6). Some of these petitioners also sought a declaratory ruling that a fax advertisement that substantially complied with section 64.1200(a)(4)(iv)[2] of the FCC's rules did not violate any regulation promulgated under the TCPA, even if the opt-out notice did not strictly conform to the specific requirements of that rule. (*Id.* at p. 6-7).

The FCC found that its rules required an opt-out notice on all fax ads, even those fax ads sent to recipients that had provided prior express invitation or permission to receive the faxes. (*Id.* at p. 9). However, the FCC also found that a footnote contained in its Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005, 21 FCC Rcd. 3787 (2006) (the "Junk Fax Order"), "caused confusion regarding the applicability of

---

[1] Plaintiff alleges that Defendant did include an opt-out notice in its faxes, but that the language used was non-compliant. (*Id.* at ¶ 16). For example, Plaintiff alleges that, rather than state that failure to comply with an opt-out request within 30 days is unlawful, the faxes described the manner for opting out and stated, "Please allow 3-4 weeks for us to update our records." (*Id.*).

[2] 47 C.F.R. § 64.1200(a)(4)(iv) provides, "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section."

2

[the opt-out] requirement to faxes sent to those recipients who provided prior express permission or created a false sense of confidence that the requirement did not apply," a situation providing good cause for individual retroactive waivers of section 64.1200(a)(4)(iv). (*Id.*). The FCC provided similarly-situated parties with an opportunity to seek similar waivers if requests were made within six months, or by April 30, 2015. (*Id.* at p. 2). The FCC will adjudicate such waiver requests on a case-by-case basis. (*Id.* at p. 16, n.102). Finally, the FCC rejected the argument made by certain of the petitioners that substantial compliance with section 64.1200(a)(4)(iv) is sufficient. (*Id.* at p. 16-17).

### B. Defendant's Petition for Retroactive Waiver

On December 17, 2014, Defendant filed its Petition for Waiver with the FCC. (ECF No. 27-1). In its Petition, Defendant argued that it "was confused by the footnote contained in the Junk Fax Order stating that the opt-out notice requirement only applied to communications that constituted unsolicited advertisements." (*Id.* at p. 4).

Defendant argues that this action should be stayed pursuant to the primary jurisdiction doctrine, or this Court's discretionary authority, pending the FCC's adjudication of its Petition for Waiver because the FCC is uniquely situated to provide a retroactive waiver, which would, in turn, affect the scope of the putative class, the scope of discovery, and may render this proceeding inadequate for class treatment.

## II. LEGAL STANDARDS

### A. Motion to Stay Generally

In determining whether to grant a motion to stay, the district court acts within its own general discretion incident to its power to control its own docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F. 2d 1519, 1525 (11th Cir. 1984); *Allmon v. United States,* No. 3:05CV527/RV/MD, 2006 WL 1401921, at *1 (N.D. Fla. Apr. 10, 2006) (citing *CTI-Container Leasing Corp. v. Uiterwyk Corp.,* 685 F.2d 1284 (11th Cir. 1982)). In certain matters, a stay may "promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions." *Axa Equitable Life Ins. Co. v.*

3

*Infinity Fin. Group, LLC,* 608 F. Supp. 2d 1330, 1346 (S.D. Fla. 2009). In exercise of their discretion, district courts are cautioned that a stay should not be granted "where the length of the stay would be immoderate or indefinite." *Allmon,* 2006 WL 1401921, at *1 (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)).

   B.  **Primary Jurisdiction Doctrine**

The primary jurisdiction doctrine "has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 416 (5th Cir. 1976).[3] The doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body…." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63 (1956). The Eleventh Circuit has explained the doctrine as follows:

> Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency. Even though the court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001).

"There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).

---

[3] All decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981, are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### III. ANALYSIS

**A. Each of the Four Factors Associated With Primary Jurisdiction Are Met in this Case**

**(1) The need to resolve an issue**

Defendant has sought a waiver from the FCC due to its alleged confusion as to the requirement of including opt-out language in faxes sent to recipients that consented to receiving the faxes. The FCC has already found that its Junk Fax Order "caused confusion regarding the applicability of [the opt-out] requirement to faxes sent to those recipients who provided prior express permission," a situation providing good cause for individual retroactive waivers of section 64.1200(a)(4)(iv). (ECF No. 22-1 at p. 9). Whether or not a waiver is granted will affect the scope of this case. The purported class in this case does not exclude recipients that consented to receiving the faxes. If the FCC grants Defendant's petition, the issue of prior consent will require discovery and affect the scope of the class.

**(2) Placed by Congress within the jurisdiction of an administrative body having regulatory authority**

The implementation and interpretation of the TCPA has been placed squarely within the jurisdiction of the FCC. *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). In response, the FCC has issued rules clarifying and interpreting the TCPA. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005, 21 FCC Rcd. 3787 (2006) (the "Junk Fax Order").

**(3) Pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme**

The TCPA and the Junk Fax Prevention Act, 47 U.S.C. § 227, are comprehensive regulatory schemes governing the use of automated telephone and facsimile equipment that both parties agree applies to Defendant's ability to send faxes to Plaintiff and others similarly situated.

**(4) Requiring expertise and uniformity in administration**

The FCC has expertise in the telecommunications area due to the fact that the TCPA and other statutes have been entrusted to its care for interpretation and

implementation. *See, e.g.*, 47 U.S.C. § 227; 47 U.S.C. § 201 (Communications Act of 1934); 47 U.S.C. § 160 (Telecommunications Act of 1996).  Moreover, the FCC has the exclusive authority to grant a waiver of compliance with the rules it promulgates pursuant to the TCPA and the Junk Fax Prevention Act.  *See* 47 C.F.R. § 1.3.  To ensure even application of the TCPA and the Junk Fax Prevention Act, the FCC should be given the opportunity to resolve the issue of waiver prior to proceeding with this case.

B.  **A Stay Is Appropriate Under This Court's Discretion to Control Its Docket**

This Court may exercise its discretion to control its own docket by granting a stay that promotes judicial economy, reduces confusion and prejudice, and prevents possible inconsistent resolutions.  *Axa Equitable Life Ins. Co. v. Infinity Fin. Group, LLC,* 608 F. Supp. 2d 1330, 1346 (S.D. Fla. 2009); *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F. 2d 1519, 1525 (11th Cir. 1984).  I find that granting the stay in this case would serve these purposes.  As stated above, the FCC's decision on the issue of waiver will affect the scope of the issues in this case, including the availability of certain defenses, the scope of the class, and potentially the propriety of a class action.

However, in an effort to balance the interests of the parties, I will allow the parties, in line with Magistrate Judge Torres' Order (ECF No. 45), to proceed with discovery related to the particular communication to Plaintiff himself that is at issue in this case, as well as discovery related to the consent/express permission defense that Defendant may assert if the FCC petition results in a waiver.

C.  **Plaintiff's Arguments In Opposition to the Stay**

Plaintiff strongly opposes a stay before discovery has been concluded. However, I find that Plaintiff will not be prejudiced by this temporary interruption, which will serve to promote uniformity and resolve an issue in this case which has been placed within the special competence of the FCC, especially given that certain discovery may proceed during the stay.  It is the FCC that has the authority to grant the waiver, and if granted, the waiver will impact the scope of this class action, including the members of the putative class and the factual issues that will need to be

developed in discovery.

In its opposition to the Motion to Stay, Plaintiff argues that the issue of consent will need to be determined through discovery in this action, regardless of the FCC's decision. I disagree. The FCC has clarified that opt-out language is required on all faxes, even those sent to recipients that consented to receiving the faxes. (*See* ECF No. 22-1 at p. 9). The issue of consent only materializes in this case if the FCC grants Defendant the waiver it seeks. Only then will Defendant have an affirmative defense of consent to assert. However, so as to balance the parties' interests, I am permitting limited discovery to proceed during the stay. *See* Section III.B., *supra*.

The cases Plaintiff cites in opposition to the Motion to Stay are not persuasive. In *Simon v. Healthways Inc.*, No. CV 14-08022, 2015 WL 1568230 (C.D. Cal. April 7, 2015), for example, the court denied defendants a stay in a factually similar case. The *Simon* Court, however, emphasized that the plaintiff had specifically alleged that, "*all* faxes sent by Defendants were without prior express permission." *Id.* at 2015 WL 1568230, at *6. Thus, the potential class in *Simon* consisted of fax recipients who had *not* provided prior express permission. In that case, accepting the plaintiff's allegations as true, the issue of prior consent would not be central to the case, and a stay to permit the FCC to grant a retroactive waiver for faxes sent with prior consent was arguably unwarranted. The *Simon* Court recognized the significance of this fact when it distinguished its case from the case of *Physicians Healthsource, Inc. v. Endo Pharmaceuticals*, No. 14-cv-002289-CMR (E.D. Pa. Jan. 5, 2015) (Dkt. No. 27), relied upon by the *Simon* Defendants. The *Simon* Court stated of the *Endo* case: "Unlike Plaintiff here, however, the plaintiff in *Endo Pharmaceuticals* asserted his claims without regard to whether the facsimile advertisements were solicited or unsolicited." *Id.* In the instant case – more like *Endo Pharmaceuticals* than *Simon* – Plaintiff has not limited his claim to faxes sent without consent. *See* First Am. Compl. (ECF No. 7) at ¶ 2 ("Plaintiff, Marvin Bondhus, MD, individually and on behalf of all others similarly situated, brings this action against Defendant Henry Schein, Inc. for its violation of the TCPA by sending, or authorizing the sending, of noncompliant facsimile advertisements to the telephone facsimile machine of the Plaintiff and to the telephone facsimile machines

of other persons or entities that do not contain the requisite opt-out notice.").

Plaintiff further argues that Defendant should not be granted a stay because it cannot demonstrate that it was "confused as to the applicability of the TCPA's opt-out requirements to advertisements sent with prior express permission," since Defendant actually included opt-out language in its faxes, albeit purportedly noncompliant language. While Plaintiff's argument appears meritorious at first blush, it fails in light of the fact that the FCC's October 30, 2014 Order granted waivers to petitioners that had failed to include any opt-out language whatsoever, *and* to those that included some form of opt-out language. (*See* ECF No. 22-1 at p. 11, n.81, p. 2, n.4, p.6, n. 38).

Finally, Plaintiff argues that, even if the FCC grants the waiver, that would not affect the propriety of certifying the class in this case because "the issue of consent in the context of a TCPA suit is not a bar to certification." Resp. (ECF No. 26) at 13, n.5. The cases Plaintiff cites, however, are distinguishable because they dealt with consent in a context where every member of the class provided the purported consent in the same manner; that is, the issue of consent was uniformly applicable to all class members. *See, e.g.*, *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) (holding that typicality element was satisfied despite issue of consent because all the fax recipients in the putative class had allegedly consented to receiving the faxes by providing their contact information to a company that compiled that information into a database); *Manno v. Healthcare Revenue Group, LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (finding that commonality was satisfied because the defendants' argument that class members consented to the debt collection calls was based on the fact that all members had provided their phone numbers on admissions paperwork, thus the consent issue was subject to "common resolution"). While I am not opining as to whether or not a class action is appropriate in this case, and the issue is not before me at this time, I do not accept Plaintiff's contention that the issue of consent in a TCPA suit can never act as a bar to certification. In fact, both *Kavu* and *Manno* recognize that it can be a bar under certain circumstances. *See Kavu*, 246 F.R.D. at 647; *Manno*, 289 F.R.D. at 686.

Accordingly, it is **ORDERED** and **ADJUDGED** that

8

1. Defendant's Motion to Stay Proceedings Pending FCC Ruling (ECF No. 21) is **GRANTED IN PART and DENIED IN PART**. The parties, in line with Magistrate Judge Torres' Order (ECF No. 45), may proceed with discovery related to the particular communication to Plaintiff himself that is at issue in this case, as well as discovery related to the consent/express permission defense that Defendant may assert if the FCC petition results in a waiver. This stay shall be immediately lifted upon the FCC's disposition of Defendant's petition for waiver.

2. Plaintiff's Motion for Leave to File Sur-Reply to Defendant Henry Schein, Inc.'s Reply Brief in Support of Its Motion to Stay Proceedings Pending FCC Ruling is **DENIED** (ECF No. 29).

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of April 2015.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*